Your Honor, this is the third case in the morning call, 29617 Kevin Mullen v. Grant Square, LLC, American Cancer Society. On behalf of the appellant, Mr. Chris Keller. On behalf of the Tappalee American Cancer Society, Mr. Anthony Rintrovato. And on behalf of Grant Square, Mrs. Maureen Dunnison. Good morning, Counsel. Presiding Justice Zinoff, due to circumstances beyond her control, is unable to be here today. She has informed us that she will review the tapes of this oral argument, though. So with that, Mr. Keller, you may proceed. Good morning, Your Honors. Good morning. Christopher Keller on behalf of the plaintiff, Kevin Mullen. Your Honors, the way defendants were served is a textbook example of how not to do it. But this unorthodoxy aside, the defendants were ultimately served. And as I will argue this morning, this service was in congruence with Illinois law. Kevin Mullen brought this suit because his jaw was shattered following the basketball tournament. The harsh facts echo the harsh penalty by which this suit was dismissed. Courts prefer to determine controversies on their merits. As such, Rule 103B is not to be used as a scythe to clear a crowded docket. The purposes of Rule 103B are to protect defendants from unnecessary delay in the service of process and to prevent the circumvention of the statute of limitations. As those aims were not frustrated here, Rule 103B was not warranted. Well, you know, throughout the briefs you talked about having a problem locating hoops for life. Yes, Your Honor. During the time that you're trying to locate hoops for life, what efforts were made to ascertain the locations of the other defendants? Your Honor, frankly, the record is not clear. But I can tell you that as far as Grant Square, I don't believe anything was done. As to Mr. Peoples, efforts were taken, multiple efforts. Unfortunately, the record is unclear as to the exact time frame. However, there were two alias summons issued to Mr. Peoples, and it took almost nine months before he was ultimately served. No, again, talking about hoops for life. Yes. I think that somebody said that there was some type of loose affiliation or some affiliation between hoops for life and the American Cancer Society. I don't know what they based that allegation on. But assuming that is true, did anybody call American Cancer Society and say, hey, how do we find hoops for life? No, that phone call was not made, unfortunately. And the trial court pointed that exact fact out. Additionally, hoops for life, we were under the mistaken impression that hoops for life was an independent entity, and that's where most of our resources, our attention was spent. But candidly, could we have done that while serving Grant Square? Yes. Because you had four separate entities sued. Yes. And the only thing in the record is regarding hoops for your attempts to serve hoops for life. Correct, Your Honor. Is the record clear regarding the time frame in which this attempts to serve a sentence for life was made? No, Your Honor. It was, I believe it was before the, after the complaint was filed. So I believe it was sometime in between June and December, which I know is not exactly pinpointing, but it was made. I know Mr. Cownie's affidavit, he was not specific in his affidavit, but it was in between June 24th and December 10th. So you have a summons issued, and then within two days of the summons being issued, you have American Censor Society and Grant Square served. Yes. Two days. So could one not make the assumption that once that complaint was filed, those folks could have been served within two days of the complaint being filed? Yes. I definitely admit that that time frame shows the ease in which they were served. Sure. And so again, you state that the basis behind the 103E is that you don't want to prejudice the defendant in preparing his defense, etc., etc. Wouldn't the lapse in time from the filing of the complaint until the service upon those two people, which was two days after summons, prejudice the defendant? I would argue no, Your Honor, for a few reasons. Why is that? Well, firstly, the three questions, essentially, per Siegel, are relevant to this issue and this question. First, did witnesses become unreachable? Did evidence become stale? Did memories lapse? And I would argue that 16 weeks is simply not enough time for those three things to happen. And I would also add that those questions can be answered with an emphatic no. And that's not simply my position. That's the position of the Supreme Court in Siegel. The Supreme Court in Siegel said 19 weeks. That time frame, that duration is simply not enough for memories to lapse, for evidence to go stale, for witnesses to become unreachable. So I think based on those factors, prejudice cannot be shown here. Now, we're not looking at actual prejudice, are we? Because the burden is on your side to show the diligent service. Yes. And then, you know, I mean, we do have the language. I think it's in Siegel, page 288, about dismissal is appropriate where the length of time denies the defendant a fair opportunity to investigate. We have that language. But really, it's not up to the defendant to show any type of prejudice, like I couldn't find this witness or that witness. We're really just looking at this time frame, correct? Correct, Your Honor. And that's the first factor in Siegel, isn't it, the length of time? Yes, that is the length of time. Although I will admit, as defendants point out in the briefs, prejudice itself is not a factor. However, I would add that in all the cases that address this issue, almost invariably the courts say these factors almost be considered in light of Rule 103B's purpose. And, again, that's why I would go back to considering Rule 103B's purpose, which is to prevent prejudice. And you said that the trial court should have held a hearing with respect to that. Yes. With respect to prejudice from the delay in service. What legal authority do you have to support this argument? Your Honor, that argument was not, frankly, was not fully fleshed out. And I don't have any cases that I can point to now other than to say that if the court disagrees with our position and that a full remand is appropriate, at least to remand for the issue of prejudice. And I would point out that the defendants did raise the issue of prejudice in the first motion to dismiss hearing. So this is not something we're simply raising and arguing and saying this is an issue that should be reversed on that. The defendants did raise the issue and said, albeit it was at oral argument, but they did say that they were prejudiced. And I would go back to, Your Honor, that the facts here show American Cancer Society, before they were ever served, filed a subpoena in the Hinsdale Police Department and asked for arrest reports, asked for witness statements. So they knew all the relevant facts. They knew the relevant witnesses. They knew the relevant parties. And this was all before service was ever effectuated. So for them to claim prejudice in saying that we didn't know what was going on, we didn't know the facts, frankly, is a bit disingenuous. Grand Square is in a similar line, albeit for a different reason. Grand Square moved for two extensions following service that essentially prolonged the case for almost three months. So I would point out before they filed a motion to dismiss under 103B, they asked for extensions, which again prolonged the case for three months. So based on those factors, in this case, I think that the prejudice issue simply cannot be made by the defendants here. I mean, the prejudice issue is really kind of a sticky thing with this because you have the language in Siegel that seems to talk of prejudice. Right. But then you have cases later that cite Siegel, Filler, Beck, Reikes, and they're after Siegel, but they talk about you don't have to show prejudice. Prejudice, it doesn't affect you. Right. I concede that the case law is not entirely clear on that. My own rebuttal to that would be simply go back to Siegel, the Supreme Court decision, where they say that after considering all these factors, which I might also point out is discretionary. That's the other confusion here is that these factors, and this is a point defendants point out in their brief, they criticize us, and rightfully so, that we did not consider the factors. We did not enumerate the factors and how they apply. And I admit that we gave the factors short shrift. However, I would simply add that these factors, again, per the Supreme Court, are discretionary. Now, admittedly, some cases later use more mandatory language. But, again, circling back to Your Honor's point, the prejudice issue is not a factor, yet it is kind of the overarching factor, just based on the rule's purpose. When you talk about time, you're talking about factor number one. Yes. You're talking about factors. It's time, length of delay for service of duty or something of that nature, length of time to obtain service. And then both briefs talk about different cases and how many weeks and how many months and things like that. But when we're talking about that length of time, now, you said 16 weeks. Yes. But your 16-week calculation is from when you believe the statute of limitations ran until the service. Isn't the length of service when all those cases talk about length of service from filing to service? Most of those cases do, although I would also simply point out the Illinois Supreme Court case of WOMAC. And, again, I'll concede that this was not pointed out in our brief. But the WOMAC case, and I can read the language right here, Your Honor. WOMAC states, we find no evidence of diligence in effectuating service. WOMAC made no attempt to place summons for a period of almost nine months after the expiration of the statute of limitations. So that's a Supreme Court decision. WOMAC followed Siegel right around the same time, 1990. So in that decision, that's based off the statute of limitations. You know, I think your opponent distinguishes Siegel by pointing out that, unlike your case, or unlike Siegel, your case had been into court a couple of times. I think you had a couple of court appearances, if I recall, where the court had a status, asked you a couple of times how everything was going on the case. I'm trying to look in my notes. Did you hear the status of the case? I think there were two dates. Was there a September and a December date? Yes, yes, Your Honor. And nothing was done? Yes. Yes. I mean, that's definitely a factor that is in their favor. I will also point out, though, that Siegel is very close in this case because, in Siegel, the plaintiff's delayed service was due to a turning inadvertence. Thus, the plaintiff in Siegel had not acted intentionally. And that was a factor that motivated the Supreme Court's decision in Siegel. And a turning inadvertence is also Mr. Mullen's flaw here. This similarity, frankly, was whitewashed by the defendants. And that similarity, a turning inadvertence, should be the catalyst for reversing here. Do you think that the attorney was inadvertent in this case, or he? I believe so. And that's where I think your opponent is trying to distinguish Siegel, is that he was in court a couple of times in the court, and we constantly reminded him, hey, in September, you know, how's it going? How's everyone served? Back four months later, three to four months later, how's it going? I mean, how could that be inadvertence? Simply going back to his office and not doing what he should have done, frankly. I mean, and I know that's probably not the best answer, but that's the only answer I can give. And, again, nothing here was intentional, and that's the key. I mean, you can call it inadvertence, and that just might be a euphemism, but at the end of the day, there was nothing intentional done by the plaintiff. And similar to Siegel, nothing was intentional there. And those are the factors, I believe, that motivated, again, the Supreme Court of Siegel to say that dismissal here is simply too harsh a benefit. The standards of review for dismissals under 103B, what do you purport that we should utilize as a standard of review? Abuse of discretion. Admittedly, that's obviously a high standard to satisfy. However, I think some of the factors here, with due respect to the trial court, warrant reversal. One of the points is how the trial court handled Siegel. And, frankly, with due respect to the trial court, it evaded Siegel for a very odd reason, an odd premise, and that is that the Siegel case originated in Cook County. And here, this case obviously originated in DuPage County. So, in essence, we can distinguish Siegel because DuPage County, we do things differently. And, frankly, as this Court knows, Illinois Supreme Court case law transcends county lines. And to say that Siegel is simply a Cook County case and this is DuPage, that's flawed reasoning. But the court points it out, don't they? They do point it out. I admit that. But, again, I would say it's addictive, but maybe not. But I still would say that, at the end of the day, it's binding precedent. It applies to every county equally and in the same way. And the applicability of the 19-week delay in Siegel is as equal to Cook County as it is to DuPage, as to this, as to any other county. So I think that that reasoning, that's the type of reasoning, frankly, that is an abuse of discretion. Is it the same standard of review as it relates to the American Cancer Society on the motion to reconsider? Yes. And I certainly would tend to agree with that because you're raising new facts as opposed to a misapplication of the law. Regarding these new facts, and, again, only as it relates to the American Cancer Society, you raise the new facts, the disability and the extension of the statute of limitations in the motion to reconsider it. Aren't those arguments forfeited? I would say that the disability argument, I'm willing to concede that that argument, frankly, was not a good one. I will dismiss it here. There was no evidence in the record, medical documentation of Mr. Mullen's disabilities. He obviously suffered severe injuries, but to the extent that they're of a Basham-esque type coma, frankly, that's not the case. And that argument, frankly, should not have been made, and it's being withdrawn here. How about his age? His age, Your Honor, as the court recognizes, it was not brought up until the motion to reconsider. I would argue that the statute of limitations is a question of law, and questions of law are reviewed de novo. And the argument about Mr. Mullen's minority status was raised in the motion to reconsider. It was the defendants had the opportunity to respond. The court actually adopted Mr. Mullen's position that the statute of limitations had been told. So this is not a case where it was brought up and the court said, no, I'm not even going to entertain it. The court fully entertained it and indeed adopted Mr. Mullen's position that the statute of limitations was indeed told and still said, no, it's being dismissed. So I would argue just that fact alone, the court did adopt, entertain, consider that argument and still said it warrants dismissal. For what period of time would it have been told? It was a very short period of time. Yes, it was about five weeks. His birthday was August 14th, and the complaint had been filed June 24th. So June 24th to August 14th. You'll have time for both. Thank you, Your Honor. I appreciate it. Mr. Richrovato, is that a correct pronunciation? Yes, Your Honor. Thank you. I'm Anthony Richrovato. I'm on behalf of American Cancer Society. And right away, I'd like to point out to the court a misstatement that I believe counsel made. Counsel argued that American Cancer Society had issued a subpoena before it was ever even served with summons in this case. The only subpoena that American Cancer Society served is in the record 037, and it was served in January of 2009. And the record is clear that we were served with summons in December of 2008. So we did not issue a subpoena prior to us being served. And I think maybe counsel misspoke. I don't think he intentionally misstated the facts, but we did not issue any subpoena before service of process in this case. Here, 24 weeks went by between the date that the complaint was filed. The complaint was filed on the 24th of June, and no summons was even issued by plaintiff on that date. And then a number of months went by, and counsel appeared on September 22 for a case management. Dockets in DuPage County set a case management conference of the initial status three months out after the case is filed. And then there was a case management on December the 10th. Counsel appeared before Judge Elsner on September 22. At that time, according to their report of proceedings, Judge Elsner pointed out that no summons had been issued yet. So counsel, for the second time in three months, went to the courthouse for this case and did not issue, did not bring a summons to the clerk of the circuit court for issuance for any of the defendants. So in these motions, it is the plaintiff's burden to prove or to establish to the trial court that they exercised diligence in obtaining service on the defendants. We do see when we talk about two different time frames. One is from date of filing to date of service, and the other one is from perhaps this five-week later date based upon the statute of limitations being pulled for age purposes. No, even the court in the Sacco case, Siegel v. Sacco, talks about the time frame is the first element. And the time frame is the lack of diligence between the date of the filing of the complaint and the date that service is finally obtained. That's the first element. Then there can be a secondary discussion, such as in the Womack case, is that the secondary discussion perhaps to support or bolster the court's decision would be not only was service had 12 months after the complaint was filed, but it was also served nine months after the statute of limitations had expired. Well, perhaps that's a comment on one of the factors in Siegel. Not one of the factors, but one of the purposes of 103B as outlined in Siegel, and that is circumvention of the statute of limitations. And maybe the court is looking at that time frame as it relates to that purpose of 103B. But your argument is that the length of time to obtain service as a factor in Siegel is from filing service. Correct. And I think the elements set forth or the factual considerations set forth in the Siegel case weren't newly developed in the Siegel decision itself. Those same factors even predated the Siegel decision, those same seven factors. And in this case, not only is 103B relevant, but Rule 102 is very relevant because Rule 102 requires that whenever a litigant goes in and files a complaint, Rule 102 requires a litigant to promptly issue summons. So Rule 102 kicks in the minute the complaint is filed, and then Rule 103 kicks in if the plaintiff fails to promptly issue the summons and fails to promptly exercise due diligence in serving the defendants. So we have counsel going to court on the 22nd and then went back to court for the case management on December 10. And at that time, the court noted once again that no summons was issued. And immediately after that, I believe, if the record's not clear, the counsel must have went straight to the clerk's office and issued the summons on the same day as the case management conference. So what precisely do you contend is the time period of the delay in having summons issued? Twenty-four weeks, as in the first element is the time frame between the date that the complaint is filed because the diligence starts then. The diligence, Rules 102 and 103 deal with when the complaint is filed. And so the time frame starts when the complaint is filed and what diligence the party exercises from the date the complaint was filed up until the time of service. So now we've got service almost immediately after the summons was issued. By the way, the record is clear that American Cancer Society has a registered agent in the city of Chicago and has a corporate presence in Oak Brook Terrace. So in response to the motion, they file an affidavit, which actually in the lower court we attacked as being conclusory and not in compliance with Rule 191 because everything that Mr. Connolly says in that affidavit is just a conclusion. He doesn't set forth any facts in support of these actions that he did. For example, page 51 of the record, the affidavit says on or about June 24, he caused a complaint to be filed with the court. So in his affidavit he could have said why wasn't that on that date? He did not issue a summons to the American Cancer Society or to Grant Square. Was there any evidence that American Cancer Society and or Grant Square were prejudiced due to this delay? Well, as indicated in the case law, prejudice is not one of the factors to be considered, but I did raise that before the lower court, and I raised it based upon the facts alleged in Plaintiff's complaint and nothing else. The allegations in Plaintiff's complaint allege that we have a bunch of teenagers all getting together for hoops for life for playing to play basketball. And we're talking about kids between the ages of 14 and 17 years old, and now they're all at ages that they can become very transient. If you sit on something like this and for 16 weeks. Pardon me? For 16 weeks. For the 24 weeks. Do you have any case law that shows that you have no quarrel that he didn't turn 18 until a certain period of time, right? So that will take it if you believe and if you respect what the judge says about the five weeks because of the time he turned 17 until he turned 18. That brings us down to arguably 16 weeks. After the statute expired. Correct. What case law do you have that shows that a 16-week delay has a dismissal based upon a 16-week delay? Do you have any cases? Well, no, because actually in like one of the most recent decisions from this court on Rule 103B, the Hatchett decision, the relevance of whether the statute of limitations expired or not, the relevance of that is whether or not the dismissal should be with or without prejudice. And in Hatchett, although in the end this court reversed the granting of the 103B motion, in Hatchett the committee comments concerning the rule were noted, and the committee comments talked about the only relevance about whether or not the statute of limitations had expired would be the determination of whether the dismissal was with or without prejudice. If at the time it was before the court for a hearing on the motion and the court decided that the litigant did not exercise due diligence and it predated the expiration of the statute of limitations, then the court under the rule can only dismiss it without prejudice. But if the hearing date was after the expiration of the statute of limitations, and the court finds that there was no due diligence, then the dismissal was with prejudice. But there is no case law that I'm aware of that discusses the issue, the facts, in the context in which you asked your question, Your Honor. I'm sorry to go in a roundabout way, but that's really how this court talked about it in the Hatchett case. Let's go back. You were talking about kids turning 14, 17 to become transient. The record in this case shows that there was a tournament registration form. Correct. So isn't that a good way that you would be able to track these people? It's not like you had a bunch of kids playing hoops and then everybody showed their basketball and went home and you're like, oh, Jesus, who was just here? You have a registration form that shows every kid who registered into this tournament. Well, we're talking not only about kids. Well, I don't know. I don't know. That could be true, Your Honor. But we're also talking about people that were watching the tournament. OK, we're talking about not only the players themselves, but we're talking about people that were there watching the tournament take place. So it might take a little investigation. Well, I guess it would be true, Your Honor. But in the end, in the end, what the case law says is that prejudice is not a factor to be considered. But you brought it up. Well, I brought it up because the plaintiff raised it in his response, which, by the way, in his response, he never, ever sets forth the things that he did to serve the American Cancer Society. Nowhere in his response does he do that. And under case law, he is required to come forth with evidence establishing what he did to try and serve the parties. But you brought prejudice up at the trial court. Yes, Your Honor. But it was in response to their response to my motion to dismiss, Your Honor. Correct. I admit that. It was an oral argument that I was responding to an assertion. But I believe I would have said to the court back then, I didn't read the report of proceedings for that at that particular point in time. But I'm pretty sure that I would have pointed out to the trial court, as I do this court, that prejudice is not a factor to be considered. And, by the way, Judge, if you even want to look into that, plaintiff never called the American Cancer Society to let them know that they intend on filing this lawsuit. They never called the American Cancer Society to ask about hoops for life or where it could be served. They never called the American Cancer Society to tell them that they're intending on bringing a lawsuit or sending them a letter to that effect or sending them a letter asking them about who in the world is hoops for life. They admit in their complaint in two paragraphs that hoops for life and American Cancer Society are either a parent company of one or a subsidiary company of the other. And the plaintiff admitted that during oral argument. But yet there's no explanation in Mr. Connolly's affidavit as to why he didn't try and serve American Cancer Society. For all we know, everything he sets forth in paragraphs one through seven of his affidavit could have been done within one hour after he filed a complaint. What was his exhaustive search? He abandoned his search. To me, the facts in the record of this case can suggest that intent, an intent not to even bother to try and serve American Cancer Society for the nearly six months that expired. There's nothing in the record. In his affidavit, he doesn't point out that their failure to act to serve Grant Square or American Cancer Society was inadvertent. You can read the affidavit five times. There's no allegation that it was inadvertent. The only thing is, is that they intentionally abandoned the search. Let me ask you one question because your time is up. Yes, ma'am. I'm sorry. You had indicated when you first got up in response to your opponent stating that a summons was issued prior to the service or prior to service. Are you submitting here that your American Cancer Society never secured those police reports until after the summons was issued? I, I was, I've been their attorney the whole time. I did not get my hands on any of these police reports until after they responded to that subpoena that was issued in late January of 2009. My client, and although, you know, I have no affidavit from my client in support of this, but my client, this came out of nowhere from my client. And so that's why when I got this lawsuit for him, I'm like, oh, we better act quickly. I filed a motion to dismiss pursuant to 103B, but we wanted to know what in the world is going on here. So at the same time I filed a motion to dismiss, I issued a subpoena to try and get the police records to find out more about the incident itself. You can get a sum up, counsel. Okay, thank you, Your Honor. Ms. Dunson. Thank you. May it please the court and counsel, my name is Maureen Dunson. I'm here on behalf of Grant Square. I'm going to be very brief as most of our arguments are the same as American Cancer Society. However, I would like to first address the argument made by the appellant during his arguments this morning that Grant Square actually delayed this case by an additional three months. I just would like to address that there were some courtesies extended to Monica Bonet with regards to filing her appearance, et cetera. As you know, we were finally served in December. It was during the holidays. We did ask for an extension, which was granted. However, there were no case management dates, really nothing going on with this case that was affected by our waiting a couple of months to file a motion to dismiss. So I would argue that an extension was necessary. So are you saying something has to be going on in the trial court in order for us to count the delay? No, absolutely not. My argument is simply that our extension before we filed our motion to dismiss has no bearing on the issues that are before you today. But did it not delay the ability to start searching for witnesses and preparing your case? No, it had no bearing on that because we were aware of the case at that point. Once we were finally served, again, 24 weeks after the complaint was filed, we were aware of it so we could take action with regards to the case at that point. Further, as Mr. Ricciarobato touched upon, counsel for appellant also argued that any delay here was unintentional. I would point the court towards the Crakey's decision that the subjective intent or his argument that this delay was unintentional is really not to be considered. But rather, we're supposed to be looking at the objective, reasonable diligence that plaintiff appellant utilized in serving these two defendants. And again, I would argue that a 24-week delay from the filing of the complaint until the date of service is simply not objectively reasonable. Further, as counsel admitted this morning with regards to what action was taken in order to find these two defendants, American Cancer Society and Grant Square LLC, he admitted there was absolutely nothing done with regards to my client, Grant Square. They didn't look for us. They didn't try to serve us. There was nothing done by his own admission. So again, I would argue that that is not objectively reasonable. What is your take on the prejudice argument? Certainly prejudice is not a factor as enumerated in Siegel, but we do have this language later in Siegel that talks about delay denying a fair chance to investigate and things of that nature. Absolutely. Counsel ties it back to the purposes of 103 as outlined in Siegel, but although it's not a factor, how are we supposed to consider prejudice? It can be considered. However, it's not dispositive. As Siegel mentions, there's seven factors, and then you can add prejudice in as an eighth factor. Not one of these factors taken on their own is necessarily dispositive. But when you take them all together, as you will see, seven out of the eight, if you want to consider prejudice, are going to weigh in favor of the defendants, if not all eight. I do concur with counsel's argument with regards to trying to find some of these attendants of the Hoops for Life tournament that, frankly, we don't know how difficult it's going to be to find these people just yet as we haven't really gotten into the meat of the case. But at the same time, like I said, it's not a dispositive issue, the prejudice issue. You have to take into consideration all seven or eight of these factors, and almost all, if not all of them, weigh in favor of dismissal for lack of diligence on behalf of the plaintiff appellant. I'd also just like to point out that the entire argument of plaintiff appellant really seems to stem on this, whether it was 24 weeks or 16 weeks. They really based their entire appeal on that one particular small issue. And I would submit to the court that that entire argument is predicated on a misunderstanding or a misinterpretation of Rule 103B, as well as the relevant case law, that the statute of limitations is really only relevant when considering whether or not this complaint should be dismissed with or without prejudice. The time used to calculate, for purposes of 103B dismissal, is supposed to be from the date of filing of the complaint to the date of service. The statute of limitations really is not supposed to be taken into consideration other than with regards to the prejudice issue. So I would submit to the court that the plaintiff has failed to present evidence that there has been an abuse of discretion in this case. I think, again, all of the factors weigh heavily in favor of both defendants and affirming the trial court's decision to dismiss this case with prejudice. And if there's any more questions, I'd be happy to address those. But otherwise, I'd ask that the decision of the trial court be affirmed. Thank you. Any rebuttal? Mr. Filner? Thank you, Your Honor. Counsel is correct. I didn't speak. The subpoena was not served until after they had been served, and I apologize for that. What I have difficulty with is reconciling counsel's position that the statute of limitations is inconsequential. And, again, I would simply read from WOMAC that states a period of almost nine months after the expiration of the statute of limitations. So I believe that that is the relevant date, and more so there's a policy issue here, and that is protecting the rights of minors. There's a very well-established line of precedent in this court going back at least 100 years that protects the rights of minors and construes statute of limitations in a way such to protect a minor's right to a day in court. And I think that policy, that principle, is relevant here. So your minor would be in better shape if he had waited to file his action right up to the statute of limitations date as opposed to filing it before he turned 18 and letting more time pass to serve those summons. Yeah, I think that would have benefited him. But your position is that you should not really basically count the time before he turned 18. Correct, Your Honor. Simply based on the statute of limitations principle 211. And WOMAC. Yes, and WOMAC. And WOMAC as well. But it kind of cuts against the diligence factor. I mean, because you have a filing, and then you're supposed to issue summonses and get these people served. So, I mean, you don't say, you know what, I'm not going to be diligent until the statute of limitations, even though I filed my lawsuit a year earlier or whatever. You do have to look at that time frame between the filing and the statute of limitations as related to diligence. I agree, Your Honor. There are some cross-purposes and conflicts on this point. And I would also just simply point out that as the counsel's position that these individuals were difficult to find, they stated in the trial court that these witnesses were, quote, students and therefore difficult to find because they were now in college. Well, I think that's the easiest way to find someone is when they're at a school, at a college. I think it's extremely easy to find these people, to find these witnesses. And, frankly, again, just to briefly sum up, what did we do to serve American Cancer Society? We didn't do anything. We thought that Hoops for Life was the relevant party. And that was mistaken. It was not an independent entity. We should have simply served American Cancer Society. What did we do to serve Grand Square? Frankly, nothing. But, again, at the end of the day, it's not hindsight of what did we do, what didn't we do. It's what was the reason. And to say that intentional or not intentional is not relevant, that simply is belied by Siegel and Womack. In these other cases, such as Crikey's and Tischer, it's all about intentional acts. In Crikey's, dismissal is warranted because they intentionally delayed serving. And that's why that case is distinguishable from this case, because there's nothing here that shows that plaintiff's actions were intentional. Now, is there any affidavit that says it was inadvertence? No, I admit that. But I think by negative inference, you can see that there was nothing intentional. And it was, at the end of the day, simply attorneys not being on the ball. So you're saying lack of due diligence does not equal intention. Correct, Your Honor. And, again, that's simply by negative inference. And, again, it's unfortunate that that's how this case is handled. But, again, look at Siegel and look at Womack. And those cases say that mere inadvertence for 19 weeks is not enough for a dismissal with prejudice under Rule 103B. And I would simply ask that the court reverse on those grounds, and if it finds distinctions between American Cancer Society and Grant Square, in the alternative, that it reverse for American Cancer Society because we at least tried to serve Hoops for Life, which we believe, again, mistakenly, that it was related or an entity with American Cancer Society. And if there are no further questions? All right. I thank the court for its time. I thank the attorneys for their arguments today. And the case will be taken under advisement.